# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JERLYN HIGH, | * |
| Plaintiff, | * |
| v. | * Civil Case No. SAG-18-3334 |
| COMMISSIONER, SOCIAL SECURITY, | * |
| Defendant. | * |

## MEMORANDUM OPINION

Plaintiff Jerlyn High ("Plaintiff") filed this case against her employer, Defendant Commissioner of the Social Security Administration ("SSA"), alleging racial discrimination, gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"). ECF 1. Defendant filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF 15, along with a memorandum of law, ECF 15-1 (collectively, the "Motion"). Plaintiff opposed the motion ("Opposition"), ECF 16, and Defendant replied ("Reply"), ECF 19. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, I will grant the Motion.

## I. FACTUAL BACKGROUND

The facts below are taken in the light most favorable to Plaintiff, the non-moving party. Plaintiff's employment with the SSA began in 1980. ECF 1, ¶ 8. In March, 2014, Plaintiff, an African-American female, was approximately fifty-six years old, and worked as a GS-14 Management Analyst, Project Manager within the Office of Central Operations ("OCO"). *Id.* ¶ 7; ECF 15-3 at 2. SSA posted a vacancy announcement for a Senior Program Advisor (GS-15)

position within the OCO's front office ("the Position"). ECF 15-2. The announcement specified that the Position was temporary and would not exceed one year, but also noted that "[t]emporary promotions or reassignments may be extended or made permanent." *Id.* at 2-3.

Plaintiff applied for the Position, and the interview panel unanimously recommended Plaintiff following the interview process. *See, e.g.*, ECF 15-5 at 38-40; ECF 15-6 at 15. The deciding official, Van Roland (formerly Van Nguyen), ECF 15-7 at 3, selected Plaintiff, and she started the Position on March 9, 2014, ECF 15-3 at 2; ECF 16-10 at 1-2. The Notification of Personnel Action reflecting Plaintiff's promotion stated that the date of the promotion was not to exceed (NTE) March 8, 2015. ECF 15-3 at 2. Upon commencing her new role, Plaintiff executed a form entitled "TEMPORARY PROMOTION/REASSIGNMENT Statement of Understanding." ECF 15-8. By signing the form, Plaintiff acknowledged, in relevant part, "I understand that I may be returned to my former position (or to a different position of equivalent grade and pay) at any time." *Id.*

Shortly after Plaintiff began her new role, William Martinez (46-year-old Hispanic male) became her immediate supervisor, and supervised her from July through November, 2014. ECF 1, ¶ 2; ECF 16-8 at 22, ¶ 7. High's second-line supervisor, the Associate Commissioner, also changed over the term of her special assignment. Ms. Roland served as the Associate Commissioner from March through July, 2014. ECF 1, ¶¶ 10, 12; ECF 16-8, ¶ 12. Upon her departure, Mr. Roy Snyder (a Caucasian male over 50 years old), took over as Acting Associate Commissioner. ECF 1, ¶ 12; ECF 16-8 at 21-22, ¶ 6. In November, 2014, Ms. Janice Foushee (67-year-old Caucasian female) returned to the Office of the Associate Commissioner (OAC) as the Associate Commissioner. ECF 1, ¶ 12; ECF 16-8 at 46, ¶¶ 1, 3. Throughout the relevant

2

period, Denise Wiley (44-year-old African-American female) served as the Executive Officer for the OAC.  ECF 1, ¶ 16; ECF 16-8 at 50, ¶ 3.

In the Position, Plaintiff served as the Project Lead for a special initiative within OAC ("the Project").  ECF 16-12 at 87.  Plaintiff's duties included leading a work group established for the Project.  ECF 16-13.  The work group included at least four members in addition to Plaintiff ("Work Group Members"):  Linda Faulkner-Martin (African-American female of unknown age); John Leuchtman (45-year-old Caucasian male); Anita Sherrod (African-American female at least 50 years of age); and Melissa Morant (African-American female believed to be in her forties).  ECF 15-5 at 17-18, 28.  The Work Group Members continued working their existing jobs, which were permanent GS-15 positions, in addition to their participation in the work group.  ECF 16-8 at 27, ¶ 51 ("I led a small team of GS-15s who likewise complained about everything"); ECF 15-5 at 20 (asserting that the Work Group Members complained so that Plaintiff "would not become a permanent GS-15 like they were"); ECF 19-2 at 55 ("These people did this as a work group, as a collateral duty to their regular jobs.").  Plaintiff, as the leader of the work group, was the only member who was on a temporary special GS-15 assignment to focus on work group duties.  ECF 15-5 at 20; ECF 16-8 at 21, ¶¶ 3-4.  Plaintiff still performed other assignments relating to OAC's front office and general operation on a regular basis, although she believed some of the duties should have been performed by employees at lower grade levels.  ECF 16-5, ¶ 12; ECF 1, ¶¶ 14, 16.  Plaintiff alleges that shortly after she began the special assignment, Roland told her that her work on the project would last for at least two years.  ECF 16-12 at 15.  However, after Roland's departure, Martinez micromanaged Plaintiff's work.  ECF 1, ¶ 13; ECF 16-8 at 25-26, ¶ 37.

Ms. Foushee and Ms. Wiley reported receiving negative feedback from certain employees about Plaintiff's leadership, ECF 15-4 at 12-13; ECF 15-6 at 11-14, though other employees wrote

3

complimentary emails to Plaintiff upon her departure from OAC, ECF 16-19. According to Plaintiff, one of the Work Group Members, Mr. Leuchtman, did not perform his assigned tasks and regularly undermined Plaintiff's authority. ECF 1, ¶ 18.

In October, 2014, Mr. Martinez completed a performance assessment of Plaintiff. *Id.* ¶ 22; ECF 16-8 at 27-28, ¶¶ 51-54. He rated Plaintiff as "Fully Satisfactory," for the period between March 2014 through September, 2014, but Plaintiff believed the rating to be lower than warranted. ECF 1, ¶ 22; ECF 16-8 at 28, ¶ 52. Mr. Martinez told Plaintiff that he had used feedback from Mr. Leuchtman, Ms. Roland, and Ms. Foushee to evaluate her work. ECF 16-8 at 27, ¶ 51. Plaintiff believes he should have talked with other relevant individuals who had favorable views of her performance. *Id.* at 27-28, ¶ 51. Moreover, Mr. Martinez did not complete a mid-year performance appraisal for Plaintiff in July, 2014, as required by SSA policy. *Id.* at 23, ¶ 11. As a result of the Fully Satisfactory rating, Plaintiff did not receive a monetary performance award for high performance. ECF 16-5, ¶ 11. Plaintiff was also eligible for, but did not receive, an Exemplary Contribution Service Act Award ("ESCA") for her work in the Position. ECF 15-13 at 5-7.

On November 17, 2014, Ms. Wiley informed Plaintiff that her special assignment would be ending, effective at the end of the month. ECF 16-8 at 4, 14. Plaintiff sought a meeting with Mr. Martinez on November 21, 2014, which was rescheduled until December 12, 2014. ECF 16-15; ECF 16-16; ECF 16-23. Effective November 30, 2014, Plaintiff returned to a GS-14 project manager position, which negatively impacted her pay and her retirement benefits.[1] ECF 15-3 at 3; ECF 16-5, ¶ 21.

---

[1] In her Opposition, Plaintiff refers to dissatisfaction with her placement, her job assignments, and her cubicle in the Division of Business Services, under an entirely new supervisory team, following the termination of her special assignment. ECF 16-1 at 7-8, ¶¶ 17-18. Those allegations are not part of the pending Complaint.

In December, 2014, Ms. Foushee assigned Ms. Wiley, who was then serving as Deputy Assistant Associate Commissioner for the Office of Earnings and International Operations, to lead the Project as a collateral duty to her regular position. ECF 19-2 at 55-56; *see* ECF 15-13 at 13.[2] Ms. Wiley did not receive a promotion or any additional compensation for taking on the Project as one of her collateral tasks. ECF 16-24 at 4. Ms. Wiley, and some Working Group Members, still contacted Plaintiff directly (rather than through her supervisor) to ask questions about the Project, despite Plaintiff's removal as Project Lead. ECF 16-14; ECF 16-17 at 1-3.

After Plaintiff's return to a GS-14 position, Mr. Leuchtman failed to provide information to Plaintiff in a timely fashion to allow her to award ESCAs to her supervisees. ECF 16-22. The email exchanges regarding the incident reflect that the processing issues affected a large number of employees, not just Plaintiff. *Id.*

On January 26, 2015, Plaintiff initially contacted an EEO officer at the Equal Employment Opportunity Commission ("EEOC") about her allegations of discriminatory treatment, ECF 16-8 at 1, and filed a final complaint on March 30, 2015, ECF 1, ¶ 6. On July 17, 2018, an Administrative Law Judge ("ALJ") granted Defendant's Motion for Summary Judgment. ECF 15-19. Plaintiff filed her Complaint in this Court on October 29, 2018. ECF 1.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

Defendant has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, a motion for summary judgment. ECF 15. A defendant is permitted to test

---

[2] In the Complaint, Plaintiff alleges that Daniel Gibson (an African-American male with about twenty years' experience at SSA), replaced her as Project Lead. ECF 1, ¶ 25. Plaintiff's Opposition makes no reference to Mr. Gibson, perhaps because discovery revealed that Mr. Gibson did not work on the Project. ECF 16-24 at 4 ("Mr. Gibson was brought over on an assignment as a senior adviser but not to fulfill the role that Ms. High had been in.").

5

the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken

as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle

7

only applies . . . if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint,'" *Goodman*, 494 F.3d at 464 (emphasis omitted) (quoting *Forst*, 4 F.3d at 250).

      **B.**    **Motion for Summary Judgment**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)). Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III. ANALYSIS

Plaintiff's Complaint contains five Counts, each alleging varying types of discriminatory and retaliatory conduct by Defendants. One of the primary alleged discriminatory acts, the termination of Plaintiff's special assignment to the GS-15 position, will be addressed first, followed by the remaining claims, organized by Count.

### A. Motion to Dismiss Termination of Special Assignment

Plaintiff's Complaint alleges that Defendant's decision to end her temporary GS-15 special assignment at the end of November, 2014 constituted both a discriminatory and a retaliatory act. ECF 1. However, Defendant argues that any claims relating to the termination of the special assignment must be dismissed, because Plaintiff did not timely contact an Equal Employment Opportunity (EEO) counselor within 45 days. ECF 15-1 at 15-17.

Federal employees are required to contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1) (2018). The SSA, through Ms. Wiley, notified Plaintiff on November 17, 2014 that her special assignment would end, and that she would be returned to her prior status as GS-14 project manager. ECF 15-7, ¶ 89. Plaintiff returned to GS-14 status on December 1, 2014. ECF 15-3 at 3. Because her position had terminated on November 30, 2014, ECF 1, ¶ 24, Plaintiff had to contact an EEO counselor on or before January

9

14, 2015 to comply with 29 C.F.R. § 1614.105(a)(1). Plaintiff did not make the required contact until January 26, 2015. ECF 1, ¶ 6. Accordingly, Plaintiff's claims pertaining to the termination of her special assignment are barred for failure to exhaust her administrative remedies. *See, e.g.*, *Upshaw v. Tenenbaum*, No. 8:12-cv-3130, 2013 WL 3967942, at *5 (D. Md. July 31, 2013) ("A prospective plaintiff's failure to contact an EEO Counselor within the 45 days described 'is tantamount to failure to timely exhaust all administrative remedies' and 'ordinarily results in dismissal of a complaint of discrimination.'" (quoting *Pueschel v. Veneman*, 185 F. Supp. 2d 566, 568 (D. Md. 2002))); *Whims v. Mabus*, No. 1:11-cv-01861, 2012 WL 12952571, at *3 (D. Md. Apr. 11, 2012) (dismissing claims where plaintiff "failed to exhaust his administrative remedies by not meeting with an EEO counselor within 45 days of his termination); *Blount v. Shalala*, 32 F. Supp. 2d 339, 341 (D. Md. 1999) ("The Fourth Circuit has held that a federal employee's failure to consult with an EEO counselor within the required time after an alleged act of discrimination, i.e. within 45 days, is grounds for dismissing the employee's Title VII claim in federal court.").

Plaintiff suggests that Defendant waived the argument regarding her exhaustion of administrative remedies by failing to raise the issue during the EEO proceeding. ECF 16-1 at 17. In fact, Defendant did argue timeliness in its briefing, ECF 19-1 at 14, 22-23, but the Administrative Law Judge did not address the timeliness issue, and instead granted summary judgment for Defendants on all of Plaintiff's claims, *see* ECF 15-19 at 21-25. I note, however, that even if Plaintiff's claims were not dismissed for failure to exhaust her administrative remedies as required, they would have failed under the summary judgment standard for the same reason as the other claims discussed below, specifically the failure to identify a comparator and/or to connect the adverse employment actions to Plaintiff's race, gender, or age. *See infra* Part III.B.3.

### B. Motion for Summary Judgment on Counts I-V

Defendant has filed its Motion as one for dismissal or, in the alternative, for summary judgment. Defendant has submitted numerous exhibits to its Motion. I must therefore first determine whether the Court can grant summary judgment before discovery has taken place.

#### 1. Satisfaction of Federal Rule of Civil Procedure 56(d)

Typically, summary judgment is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To present the issue, the nonmovant is typically required to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery.

In this case, Plaintiff filed an "Affidavit in Support of Rule 56." ECF 16-7. The substance of the affidavit reads, in its entirety:

> The present case is in its infancy stage and I have not been able to avail myself of discovery in this court proceeding. This discovery would allow me to fully present all disputed facts as well as evidence of a *prima facie* case in opposing the Defendant's pending Motion for Summary Judgment.

*Id.* That affidavit does not comport with the requirement of Rule 56(d) that the nonmovant provide specified reasons it requires discovery to present facts it needs to oppose the motion. The Fourth Circuit has held that a Rule 56(d) request for additional discovery should be denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55

11

F.3d 943, 954 (4th Cir. 1995). Because Plaintiff has not identified what evidence she seeks in discovery, this Court is unable to ascertain whether the additional evidence might create a genuine issue of material fact.

Moreover, the procedural posture of this case distinguishes it from the situations in which a pre-discovery summary judgment motion is akin to "forc[ing] the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). The parties in this case litigated near-identical claims before the EEOC, and Plaintiff's current counsel deposed many, if not most, of the relevant witnesses during that proceeding. *See, e.g.*, ECF 15-4 (Foushee Dep.); ECF 15-5 (Plaintiff Dep. I); ECF 15-6 (Wiley Dep.); ECF 15-9 (Martinez Dep.); ECF 15-13 (Plaintiff Dep. II). Plaintiff cited to excerpts from those depositions to support her Opposition to the pending motion, along with the other exhibits she submitted. *See, e.g.*, ECF 16-12 (Plaintiff Dep.); ECF 16-24 (Martinez Dep). Despite the benefit of the discovery taken at the administrative level, Plaintiff failed to identify any facts she might adduce through additional discovery that might create a genuine issue of material fact. Given the deficiencies in Plaintiff's affidavit, and the degree of discovery already in the parties' possession, this Court will address Defendant's motion as one for summary judgment. *See Volochayev v. Sebelius*, 513 F. App'x 348, 351-52 (4th Cir. 2013) (affirming a trial court's denial of Rule 56(d) request where a plaintiff had gone through an administrative process providing "ample opportunity to discover the information he later sought through his Rule 56(d) motion.").

### 2. Counts I-III: Discrimination on the Basis of Race, Gender, and Age

In the first three counts of her Complaint, Plaintiff alleges that she was subjected to disparate treatment on the basis of her race, gender, and age, respectively. ECF 1, ¶¶ 26-49. In

12

addition to the termination of her special assignment, discussed above, she alleges the following forms of discrimination: micromanagement and being asked to perform job duties more suitable for employees below the GS-15 level; a lowered performance appraisal; and a failure to award her a performance bonus. ECF 1, ¶¶ 13, 14, 16, 22, 23.

Plaintiff proffers no evidence of direct discrimination, such as comments made by any of her coworkers or supervisors, about her race, gender, or age.[3] To establish a claim of disparate treatment under Title VII (for race and gender), in the absence of any direct evidence of discrimination, plaintiffs employ the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That framework requires a plaintiff to establish a *prima facie* case of discrimination, which requires proof of "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). If a plaintiff meets her burden to establish a *prima facie* case of discrimination, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the disputed employment action. *See Texas Dept. of Cnty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981). Where a defendant successfully rebuts the presumption raised by the plaintiff's *prima facie*

---

[3] The record reflects that the panel who unanimously recommended Plaintiff for the special assignment in February, 2014 consisted of Ms. Foushee, Mr. Leuchtman, and Ms. Wiley, along with Ms. Roland. ECF 16-10. Although Plaintiff's claims do not reach the pretext prong of the analysis, where the same actor inference might apply to the allegations that Ms. Foushee, Mr. Leuchtman, and Ms. Wiley discriminated against Plaintiff just months later on the basis of her race, gender, or age, those individuals' recommendation of Plaintiff for the Position would have undermined her factually unsupported assertions of discriminatory intent. See ECF 16-1 at 13 ("Plaintiff has identified Anita Sherrod, Denise Wiley, Betsy Bake, and Jack Leuchtman as having harassed her and discriminated against her."); *id.* at 14 ("Ms. Foushee relies on feedback of those who harassed Plaintiff throughout her time in her special assignment. Later, she rewarded them with positions that served to advance their careers."); ECF 15-4 at 14 (Ms. Foushee's testimony that she made the decision to terminate Plaintiff's special assignment in November, 2014).

case, then the plaintiff has the burden of proof to establish "that the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination." *Id.* at 253. Although *McDonnell Douglas* involved a claim of racial discrimination in violation of Title VII, the Fourth Circuit has used its framework to consider cases involving ADEA age discrimination claims. *See Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019); *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006). *But see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009) (stating that the Supreme Court "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . utilized in Title VII cases is appropriate in the ADEA context").

Here, Plaintiff's case fails at the initial step of the *McDonnell Douglas* framework, because Plaintiff is unable to show a *prima facie* case of disparate treatment as to any of the alleged discriminatory acts. Specifically, Plaintiff has not shown "different treatment from similarly situated employees outside the protected class." *Coleman,* 626 F.3d at 190. Plaintiff cites to just three individuals as potential comparators: James Leuchtman, Craig Rogers, and Steven Knight. ECF 1; ECF 16.

As to Mr. Leuchtman, in her Complaint, Plaintiff asserts: "That Plaintiff was similarly situated to John Leuchtman (Caucasian) in that they were both GS-15s. Jack Leuchtman reported directly to William Martinez prior to July 2014, had a close working relationship while both were in the Office of International Operations, and was in Plaintiff's work group with her." ECF 1, ¶ 33. Plaintiff further alleges that Mr. Leuchtman was not subjected to discrimination, but some of the discrimination she alleges would be patently inapplicable to Mr. Leuchtman, such as the "abrupt end to her detail assignment when more GS-15 level work was pending and was later reassigned to others despite Plaintiff continuing work on the project in her GS-14 position." *Id.* ¶

14

34. Plaintiff does not allege that Mr. Leuchtman was a GS-14 on a temporary special assignment at the GS-15 level. Even though, during the period of her special assignment, she and Mr. Leuchtman were both paid as GS-15s, an equivalent pay grade alone does not establish that a comparator is similarly situated. *See Masters v. City of E. Point,* No. 1:06-cv-1047, 2008 WL 11322926, at *15 (N.D. Ga. Feb. 1, 2008) ("The fact that all of Plaintiff's alleged comparators were in the same pay grade is irrelevant to the issue [of] whether Plaintiff and they performed work with substantially similar responsibilities."), *report and recommendation adopted in part and rejected in part on other grounds,* 2008 WL 11322958 (N.D. Ga. Feb. 28, 2008); *see also McGinnis v. Donahoe,* No. 2:12-cv-01880, 2015 WL 507043, at *8 (W.D. Pa. Feb. 6, 2015) (holding that a plaintiff and alleged comparators in the same job grade were "not in a similar position . . . and cannot be similarly situated").

Plaintiff's own allegations establish that Mr. Leuchtman was a member of the work group she was charged with leading on a full-time basis. ECF 1, ¶¶ 17, 18. She does not allege, and has not adduced evidence, about whether Mr. Leuchtman did or did not receive a performance bonus, but in any event, Mr. Leuchtman was not a temporary employee who served in more than one capacity during the year. Plaintiff adduces no evidence about Mr. Leuchtman's job duties, whether his supervisors included the same people supervising Plaintiff, or the substance of his performance appraisals, or whether he received any ESCAs. *See, e.g.*, ECF 15-13 at 8 (plaintiff's deposition testimony stating, "I don't know. I cannot tell you who received an [ESCA] award and who did not."). In fact, the record reflects that Mr. Leuchtman's supervisors were Milt Beever and Roy Snyder, not Mr. Martinez and Ms. Foushee. ECF 16-8 at 37, ¶ 5. Also, Mr. Leuchtman's work building was located ten minutes away from Plaintiff's, further corroborating the fact that their

employment conditions were dissimilar. ECF 16-12 at 10. Thus, Mr. Leuchtman could not have been similarly situated for the purpose of comparing the treatment he received in the workplace.

Plaintiff's allegations are equally deficient with respect to the only other two persons she alleges to have been similarly situated, Mr. Rogers and Mr. Knight. *See* ECF 16-1 at 22 (alleging that Mr. Martinez and Ms. Foushee did not discriminate against Mr. Rogers or Mr. Knight, "both employees in the front office of OAC who were GS-14s and Project managers, the same grade and title Plaintiff maintained prior to her being selected for the special assignment"). Given that Plaintiff's allegations of discrimination centered around her treatment during and at the termination of her special assignment as a GS-15, other GS-14 project managers are inherently incomparable. Where a plaintiff relies "upon a comparison to an employee from a non-protected class . . . the validity of their *prima facie* case depends upon whether that comparator is indeed similarly situated." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam) (citing *Burdine*, 450 U.S. at 258). A showing that employees are similarly situated includes evidence that the employees "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)) (alterations in original). Without a similarly situated comparator serving part of the year in a GS-15 special assignment, whose position can be compared in terms of "micromanagement," assigned job tasks, ESCAs, performance evaluations, or date of termination, Plaintiff is unable to establish a *prima facie* case of disparate treatment to support her claims in Counts I-III. Summary judgment in Defendant's favor is therefore appropriate.

3. Counts IV and V: Retaliation

The remaining two counts of Plaintiff's Complaint allege retaliation in violation of Title VII (race and gender) and the ADEA (age). ECF 1, ¶¶ 50-69. To establish a *prima facie* case of retaliation, Plaintiff must show "(1) that [she] engaged in protected activity, (2) that [her employer] took an adverse employment action against her, and (3) that a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Md. – E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (internal quotation marks omitted) (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)).

Plaintiff alleges that she engaged in protected activity when she complained to Mr. Martinez about Mr. Leuchtman. ECF 16-1 at 23 ("Specifically, Plaintiff informed Mr. Martinez that Mr. Leuchtman made ongoing, public statements that Plaintiff was 'disingenuous' and wanted Mr. Martinez to address his harassing behavior and instruct him to cease such behavior."); *see also* ECF 16-12 at 8 (Plaintiff's testimony that she mentioned to William Martinez "at least three times" that she did not want Mr. Leuchtman to call her "disingenuous"). Other than those complaints, the record is devoid of any evidence that Plaintiff complained of discriminatory treatment. *See* ECF 15-7, ¶ 66 (Plaintiff's affidavit in the EEO proceeding, "Did you report these incidents to anyone and advise them you were being harassed? No."). Plaintiff's complaints to Mr. Martinez about Mr. Leuchtman's use of the term "disingenuous" do not qualify as protected activity, because Plaintiff did not allege discrimination on basis of her race, age, or gender. Although the Fourth Circuit has a relatively expansive definition of protected activity, a plaintiff's actions must be intended to "bring attention to an employer's discriminatory activities." *Demaster v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cty.*,

17

555 U.S. 271, 276 (2009) (holding that protected activity requires an employee's complaints to communicate "a belief that the employer has engaged in . . . a form of employment discrimination" based on membership in a protected class). Plaintiff's complaint to her supervisor about the rude or unpleasant comments made by Mr. Leuchtman does not constitute protected activity, absent some connection to her race, gender, or age. *See Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 248 (D. Md. 2016) ("General complaints of unfair treatment are not protected activity.")

Finally, to the extent Plaintiff also claims a hostile work environment, she cannot sustain it. To establish a hostile work environment, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Further, among other elements, a plaintiff must prove that "the harassment was based on [the plaintiff's] race, color, religion, national origin, or age." *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006). A hostile work environment cannot be shown by establishing "callous behavior by [one's] superiors," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), or "a routine difference of opinion and personality conflict with [a plaintiff's] supervisor," *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 276 (4th Cir. 2000). Plaintiff's allegations fall squarely within those latter categories. While Plaintiff certainly alleges that she felt mistreated by her supervisors and by others in her work group, she has not adduced any evidence linking the unpleasant behavior to her race, gender, or age. Without any evidence to create a genuine issue of material fact, summary judgment is warranted.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF 15, will be GRANTED. A separate Order follows.


Dated: October 16, 2019                              /s/
                                         Stephanie A. Gallagher
                                         United States District Judge